**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Svetlana Virovtseva and Brandon Robinson, | No. 26-cv-14 (KMM/DJF) |
| Plaintiffs, | |
| v. | **ORDER** |
| Ciresi Conlin LLP, Kathleen Flynn Peterson, and Colin Peterson, | |
| Defendants. | |

---

In this legal-malpractice action, Plaintiffs Svetlana Virovtseva and Brandon Robinson assert claims of negligence and breach of fiduciary duty against Defendants Ciresi Conlin LLP, Kathleen Flynn Peterson, and Colin Peterson, who previously represented them in a medical-malpractice case. The matter is before the Court on Defendants' Motion to Dismiss. (Dkt. 20.) For the reasons discussed below, the Motion is denied.

## BACKGROUND[1]

On January 15, 2018, Plaintiff Svetlana Virovtseva underwent surgery at the Mayo Clinic in Rochester, Minnesota, to remove a benign nodule on her thyroid. (Dkt. 9 ¶¶ 16–17.) Ms. Virovtseva alleges that she "consented to the surgery on the express condition that

---

[1] Of course, this recitation of facts is presumed true at this stage. *Norgren v. Minn. Dep't of Hum. Servs.*, 96 F.4th 1048, 1054 (8th Cir. 2024) (stating that the court "accept[s] the factual allegations as true" for purposes of evaluating a motion to dismiss).

1

a nerve monitor would be used during the procedure to limit the possibility of nerve damage," a condition that was reflected on the consent form she signed. (*Id.* ¶ 17.)

After Ms. Virovtseva was anesthetized, the surgeon learned that no nerve monitors were available. (*Id.* ¶ 18.) Although Mr. Robinson, who had medical power of attorney for Ms. Virovtseva as her husband, was available at the hospital, the surgeon did not consult with him. Instead, the surgeon performed the surgery, which was not urgent, without a nerve monitor despite knowing that Ms. Virovtseva's consent was contingent on its use. (*See id.* ¶¶ 18–21.) Because of the surgery, Ms. Virovtseva suffered permanent nerve damage that requires ongoing monitoring and medical treatment. (*Id.* ¶ 22.)

Intending to pursue a medical-malpractice action against her surgeon and the Mayo Clinic, Ms. Virovtseva and Mr. Robinson retained Defendants shortly after the surgery.[2] (*Id.* ¶ 24.) Plaintiffs allege that Defendant Kathleen Peterson had previously been treated by the same surgeon who operated on Ms. Virovtseva, but Ms. Peterson failed to disclose that fact to Plaintiffs. (*Id.* ¶ 25.) According to Plaintiffs, Defendants did not take action on the case until about two years later, in February 2020, when they sent a letter to the Mayo Clinic's attorneys claiming that Ms. Virovtseva's surgeon had violated her informed consent by performing the surgery without a nerve monitor. (*Id.* ¶¶ 26, 28.) Between then and November 22, 2021, when Plaintiffs received a "shockingly low offer in full settlement

---

[2] Defendants Kathleen Flynn Peterson and Colin Peterson were employed at Robins Kaplan LLP when they were initially retained. (Dkt. 9 ¶ 24.) About a year later, in or around March 2019, they changed employers to Ciresi Conlin LLP and continued to represent Plaintiffs after doing so. (*Id.*) Ciresi Conlin LLP is a named defendant in this action.

of all claims," Defendants "appear[ed] more concerned with preserving their friendly relationship with the Mayo [Clinic's] lawyers than zealously representing [Plaintiffs'] best interests," and their actions "suggest[ed] a general lack of concern . . . and very little sense of urgency" about Ms. Virovtseva's case. (*See id.* ¶¶ 35–38.) Upon receiving the initial settlement offer, Defendants did not attempt to negotiate and "urged" Plaintiffs to accept it because the offer was "non-negotiable," "the most [they] could expect to recover," and comparable to offers made by the Mayo Clinic in other cases. (*See id.* ¶¶ 39, 41.) Sometime after receiving the offer, Defendants "advised [Plaintiffs] that they could not pursue a malpractice claim because [Defendants] had not identified an expert who would support the claim." (*Id.* ¶ 40.)

In early January 2022, Plaintiffs terminated Defendants' representation and retained successor counsel, who identified several expert witnesses and filed a complaint against the Mayo Clinic and Ms. Virovtseva's surgeon in state district court on January 13, 2022, just two days before the four-year anniversary of her surgery. (*Id.* ¶¶ 34, 42–43.) Relevant here, the complaint included a claim of medical battery. (Dkt. 23 (Ex. A) at 1–2.[3]) The state court dismissed the claim, finding that the applicable statute of limitations was two years and had expired on January 15, 2020. (*Id.* at 17 (citing Minn. Stat. § 541.07(1)).) In July 2024, before trial commenced, Plaintiffs settled their remaining claims "for approximately 2.5 times the Mayo's original . . . offer." (Dkt. 9 ¶ 46.) Plaintiffs allege that the settlement

---

[3] For this document only, the citation is to the PDF pagination. For all other page numbers, the Court cites to the CM/ECF pagination.

amount "would have been substantially higher if the defendants had preserved the medical battery claim against [the surgeon]." (*Id.*)

On January 2, 2026, Plaintiffs initiated this legal-malpractice action alleging that Defendants acted negligently and breached their fiduciary duty while representing Plaintiffs in the underlying medical case.[4] (Dkt. 1.) On March 10, 2026, Defendants filed the Motion to Dismiss the Second Amended Complaint that is now before the Court.[5] (Dkt. 20.)

## ANALYSIS

In seeking dismissal of both the professional-negligence and breach-of-fiduciary-duty claims, Defendants argue that Plaintiffs cannot establish the requisite causal connection between Defendants' alleged conduct and any damages Plaintiffs incurred. (Dkt. 22 at 6–7.) Defendants' argument turns exclusively on their position that, under Minnesota law, the statute of limitations for Ms. Virovtseva's underlying battery claim against her healthcare providers is four, and not two, years.[6] (*See id.* at 8–13.) Therefore, their conduct did not cause Ms. Virovtseva's damages, but the state judge's mistake of law did. According to Defendants, the Court must determine the applicable statute of

---

[4] The original Complaint has been amended twice. (*See* Dkts. 1, 6, 9.) The Second Amended Complaint (Dkt. 9) is the operative pleading.

[5] The Court held a hearing on the Motion on May 27, 2026. (Dkt. 33.)

[6] There is no dispute that both claims are substantively governed by state law or that the statute-of-limitations issue as to the underlying medical-battery claim requires interpreting state statutes. (Dkt. 22 at 4; Dkt. 28 at 4–10 (citing exclusively state statutes and caselaw).)

limitations at this stage, because if the Court agrees with their position, dismissal is required.

The Court disagrees.[7] Because the Court rejects Defendants' sole argument for dismissal, the Court denies the Motion to Dismiss.

## I.      Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual allegations to state a claim to relief that is plausible on its face." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quotation omitted). The allegations in the complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, courts must assume that all factual allegations in the complaint are true and grant all reasonable inferences in favor of the nonmoving party. *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1113 (8th Cir. 2024). However, courts "need not accept as true a plaintiff's conclusory

---

[7] The question of the statute of limitations applicable to medical-battery claims like the one here is unsettled. *Compare Fearing v. Univ. of Minn. Med. Ctr.*, No. A22-1686, 2023 WL 6543277, at *6 (Minn. Ct. App. Oct. 9, 2023) (citing Minn. Stat. § 541.07(1) and applying the two-year statute of limitations to a medical-battery claim because it is an intentional tort), *with Mercer v. Andersen*, 715 N.W.2d 114, 120 (Minn. Ct. App. 2006) (applying the four-year statute of limitations set forth in § 541.076(b) where medical-malpractice action included a battery claim); *see also Blackwell v. Ramsey Cnty. Corr. Facility*, No. 24-906 (PAM/DJF), 2024 WL 3224766, at *5 (D. Minn. May 21, 2024) (applying § 541.07's two-year statute of limitations to intentional-tort claim of battery arising from plaintiff being forcibly medicated without consent).

allegations or legal conclusions drawn from the facts." *Ingram v. Ark. Dep't of Corr.*, 91

F.4th 924, 927 (8th Cir. 2024) (quoting *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717

(8th Cir. 2019)). Stated otherwise, there must exist "more than a sheer possibility that a

defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "A defendant moving

for dismissal under Rule 12(b)(6) bears the burden of demonstrating its entitlement to

dismissal." *Preble v. Itasca Cnty. Bd. of Comm'rs*, No. 25-cv-3006 (LMP/LIB), 2025 WL

3458052, at *6 (D. Minn. Dec. 2, 2025) (citing See 5B Wright & Miller's Federal Practice

& Procedure § 1357 (4th ed., Sept. 2025 update), and *Marcure v. Lynn*, 992 F.3d 625, 631

(7th Cir. 2021)).

## II.   Negligence (Legal Malpractice)

Plaintiffs allege that Defendants were negligent in three ways: by (1) "miss[ing] the

statute of limitations on [Ms. Virovtseva's] medical battery claim; (2) "fail[ing] to identify

a single expert witness in almost four years even though [successor counsel] identified and

retained three in a matter of weeks"; and (3) taking an "incompetent approach to settlement

negotiations," which "cost [Plaintiffs] valuable time and leverage." (Dkt. 9 ¶ 49.)

In Minnesota, a plaintiff bringing a claim of professional negligence in a legal-

malpractice action must establish

> (1) the existence of an attorney-client relationship, (2) acts
> constituting negligence, (3) that such acts were the proximate
> cause of the plaintiff's damages, and (4) that but for
> defendant's conduct, the plaintiff would have been successful
> in the prosecution or defense of the action.

*Reichel v. Wendland Utz, LTD*, 11 N.W.3d 602, 612 (Minn. 2024) (quotation omitted). The

element of but-for causation "may be satisfied if a plaintiff demonstrates a winnable

case-within-a-case in the underlying litigation." *Id.* (cleaned up). A "typical malpractice scenario" occurs "when an attorney's alleged negligence in failing to file an action on behalf of the plaintiff 'permit[s] the statute of limitations to operate against [the] plaintiff's claim.'" *Id.* at 613 (first alteration added) (quoting *Christy v. Saliterman*, 179 N.W.2d 288, 293 (Minn. 1970)).

For two reasons, the Court disagrees that dismissal is required. First, contrary to Defendants' suggestion, the statute of limitations applicable to Ms. Virovtseva's underlying medical-battery claim does not affect whether Plaintiffs state a claim for negligence based on Defendants' other alleged failures. For example, Plaintiffs allege that Defendants took an "incompetent approach to [the] settlement negotiations" that occurred over three years after Ms. Virovtseva's surgery, based in part on their undisclosed conflict of interest. (*See* Dkt. 9 ¶¶ 25, 35–39.) And the significant delay in working on the case, combined with a failure to identify expert witnesses, are alleged to have damaged Plaintiffs' prospects. Even if the Court resolved the statute-of-limitations issue in Defendants' favor, it would not demonstrate that Plaintiffs' negligence claim is implausible or fails as a matter of law.

Second, the correct statute of limitations for the medical-battery claim is relevant, but not dispositive of the issue. Even if the Court agreed with Defendants that the applicable statute of limitations was four years, such a conclusion would not necessarily foreclose the possibility that Defendants were negligent by delaying the filing of Ms. Virovtseva's claim. *See, e.g.*, *Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 691 N.W.2d 484, 493 (Minn. Ct. App. 2005) (concluding that attorneys could be held liable for legal

malpractice because "while an attorney is not liable for an error of judgment or mistake in a point of unsettled law, the attorney must exercise legal judgment in some way to be so protected," and attorneys had "not research[ed] the issue . . . before advising" their clients). Whether Defendants were required to do more for their clients in the face of unsettled law is both a fact-bound question and one that was not briefed by the parties in this Motion. Therefore, the Court concludes that Defendants have not met their burden of showing that dismissal of Plaintiffs' negligence claim is proper. *Preble*, 2025 WL 3458052 at *6 (stating that "[a] defendant moving for dismissal under Rule 12(b)(6) bears the burden of demonstrating its entitlement to dismissal").

For these reasons, the Court denies the Motion to Dismiss as to this claim.

### III.   Breach of Fiduciary Duty

Next, Defendants argue that Plaintiffs' breach-of-fiduciary-duty claim should be dismissed for the same reason—because the two-year statute of limitations precludes them from establishing causation, which is also required to plead a breach of fiduciary duty. (*See* Dkt. 22 at 5–6 (citing *Frederick v. Wallerich*, 907 N.W.2d 167, 173 (Minn. 2018))). Again, the Court disagrees.

The statute of limitations applicable to the medical-battery claim is largely irrelevant to the viability of Plaintiffs' breach-of-fiduciary-duty claim. The claim is primarily based on Defendants' alleged "fail[ure] to disclose [Ms. Peterson's] prior relationship with [Ms. Virovtseva's surgeon]," which constituted a "serious conflict of interest" and "contributed to [Defendants'] negligent representation of" Plaintiffs. (Dkt. 9 ¶¶ 25, 54–55.) A determination of the applicable statute of limitations simply does not answer whether

8

Plaintiffs' breach-of-fiduciary-duty claim should be dismissed. In the absence of any alternative arguments for dismissal, the Court declines to grant the Motion as to this claim as well. *See Haltom v. Parks*, No. 8:15-CV-428, 2017 WL 933042, at *5 n.7 (D. Neb. Mar. 8, 2017) (declining to dismiss claims "in the absence of an argument from the [moving party] explaining why [the court] should do so").

*   *   *

The Court concludes that Defendants have not met their burden of establishing that dismissal is appropriate. *See Preble*, 2025 WL 3458052 at *6. While discovery may reveal that Defendants satisfied their duty of care to their clients, that is a question for another day.

**ORDER**

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt. 20) is **DENIED**.

Date: July 8, 2026                         *s/Katherine M. Menendez*
                                           Katherine M. Menendez
                                           United States District Judge